THE COMMONWEALTH OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, EMINENT DOMAIN DIVISION, PEDRO SANTOS BORGES, JUDGE, Respondent; PLANTA DE CAL HICACO, INC., ET AL., Interveners.

No. C-66-36.     Decided October 10, 1967.

*J. B. Fernández Badillo, Solicitor General,* and *Adaljisa Díaz Collazo, Assistant Solicitor General,* for petitioner. *Clemente Pérez Martínez* and *R. Elfrén Bernier* for interveners.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

■ Based on the premise that the two small islands "Hicacos" and "Ratones" were the property of the Commonwealth of Puerto Rico, the petitioner filed a petition for condemnation, in the Eminent Domain Division of the Superior Court of Puerto Rico, of whatever rights the interveners could have and deposited the amount of two dollars as the reasonable value of the possible property rights of the interveners. It seems that the petitioner also parted from the premise that the possession of the interveners, notwithstanding the title deed recorded, was held at sufferance. Thus the action presented for the condemnation of both small islands does not possibly meet the constitutional provision which prohibits the taking or damaging of private property for public use without just compensation and in the manner provided by law, the legal procedure being the previous deposit of what the condemnor deems to be the just value of the property.

The trial court, with its habitual experience and strict sense of procedure, confronted the first problem of the issue: Whether the State was the owner of the two small islands which were sought to be condemned, or on the contrary, whether the interveners were the true owners.

The history of the title, that the interveners claim to have, is quite brief. In 1872, by virtue of the authority granted by the Royal Decree of June 11, 1868, to the Superior Board for the Distribution of Barren Lands of Puerto Rico, the latter decreed the issuance of the corresponding warranty deed over two small islands known as "Hicacos" and "Ratones" in favor of Leandro Fort Torres, then Captain of the Port of Fajardo, and pursuant to that agreement, His Excellency the Superior Civil Governor Ramón Gómez, President of the aforesaid board, in the name of His Majesty, King Amadeo Primero, granted the effective ownership of said islands to Leandro Fort Torres "for his

possession and enjoyment as true owner under the self-imposed indispensable condition, that he would have it at the disposal of the government at any time it would be required of him and the compulsory condition that he would cultivate one-tenth of the land within the term of one year, one-fourth within four years and one-half within ten years, for the benefit of agriculture under the penalty of revocation of the grant and reversion of said land to the State upon failure to meet said condition; and subject to the condition which is likewise imposed on him that in two months at most from the date of this deed he must begin to cultivate the lands granted to him, in which case no one can disturb his possession or dispute his ownership, for he will be protected and sustained by the territorial judges and other authorities who are exhorted and requested to that effect, the grantee having to pay the rights of land."

As to the first indispensable condition which is said to have been self-imposed by petitioner (Leandro Fort Torres) of keeping the islands at the disposal of the Government at any time it was required of him, it is a reformulation, out of mere bureaucratic courtesy of the traditional obligation of all founders, inhabitants or residents of land subjected to a sovereignty recognized by the Rights of the People of permitting the establishment of campaign artillery, maritime vigilance by armed patrol, and coast-guard services necessary for the defense of the Island. As to the second condition, related to the cultivation, it seems that Leandro Fort Torres did not fulfil to the very point although he complied in part with his obligations of farmer. It should not be forgotten that the small islands involved in the concession were rocky and hilly lands with an extensive layer of limestone, embedded in the solitude of the sea like those bare rocks rising on the coastline where rock goats are dehorned. His nonperformance of the planting obligation led Leandro

Fort Torres to sell the property in the year 1887, to the residents of Fajardo, Juan Lavaggi and Ignacio García.

It appears that the new owners did not comply with their pledge either, although to some extent they fulfilled their obligations of growers, but, they initiated a quarry business of which there still exists proof of a profitable industrial exploitation.

In 1890, the Spanish State made an investigation of the fulfillment of the condition of planting and, having discovered that the requisites of the second condition had not been fulfilled, obtained the reversion of the property in favor of the state on August 29 of the same year. Fortunately, on April 17, 1884, at the request of the Secretary of Overseas, pursuant to the State Council in banc His Majesty, King Alfonso XII, by Royal Decree of the same date passed the Regulations for the Adjustment of Unappropriated Lands in Puerto Rico— see: CXXXII Legislative Collection of Spain, First Semester of 1884, 331–334 (*edición de la Imprenta del Ministerio de Gracia y Justicia de 1884*)—whose § 5 provided as to unappropriated lands: "Persons in possession of lands without color of title and unable to plead the right of prescription established in § 2 of these Regulations may acquire the ownership thereof—twenty years of continuous possession if they were found cultivated and thirty years if found uncultivated—provided the same are planted with coffee or other agrarian crops referred to in clause 3 of the Royal Order of June 5, 1877, by paying into the Treasury the assessed value of the lands at the time when they were taken possession of unlawfully."

On the other hand, § 9 of the same Regulations provided that the prosecution of the adjustment proceedings, and the incidents arising therefrom would devolve on the General Commissioner of the Treasury; § 10 provided that those concerned could send their petition to the General Commissioner of the Treasury, stating the name of the town and

of the place where the land to be adjusted was situated as well as the boundaries and approximate area thereof; §. 13 provided that the titles of ownership of the land acquired by the possessors mentioned in § 5 of the Regulations, and of those which have been acquired by adjustment, would be granted by the General Commissioner of the Treasury of the province.

■ Making use of his still effective condition of owner, Juan Lavaggi, by mediation of the mayor of Fajardo, Delfín Sierra, undertook to take the proper steps to obtain the adjustment—meaning the transformation of a default in a substantial performance—by presenting before the General Commissioner of the Treasury, and under public oath, the juridical fact of having tried, he as well as his partner Ignacio García, "to cultivate said small islands without obtaining fruits because of the fact that the land was dry and too sterile, these areas having suffered heavy droughts rendering them unproductive, the only possible cultivation being a small amount of pasture at certain times of the year which is used for the cattle of the sugarcane plantation which they own in this locality, having established, in the aforementioned lands, the industry of the manufacture of lime which is the only thing that it yields because the island is almost all rock, and which industry has been established for years, the taxes levied on said industry having been paid." This statement was accompanied by another of the Mayor of the ward of Sardinera, Cecilio Quiñones, given before the Municipal Clerk of Fajardo, Manuel Vilá on March 5, 1887, in which Quiñones states that he is acquainted with the two small islands known as "Hicacos" and "Ratones" which are close to the Municipality of Fajardo, and knows "that at present a portion of them, that is, about twenty cuerdas, are planted with pasture in which at times the cattle of the farm belonging to García and Lavaggi graze, there not being any cultivation because it is arid land, and because of the

droughts it suffers and that there is a limekiln, which industry has been exploited for years by Lavaggi. That the foregoing is the truth stated under oath, its content being affirmed and ratified and upon the statement being read to him, he expressed his conformance therewith, Manuel Vilá signing it after the Mayor, before me the Clerk to which I attest."

On September 2, 1887, the Most Excellent General Commissioner of the Treasury informs the mayor of Fajardo that by agreement reached the previous day he had decided to declare in state of cultivation twenty cuerdas of pasture of those which at that time were possessed by the partnership of García and Lavaggi out of forty-five cuerdas, forty-four hundredths of land granted to Leandro Fort so that he would state whether he agreed or not with the statement made by the Treasury of the cultivated portion. The object of this administrative assessment report was to make viable the application of the rate scales fixed in § 7 of the Regulations for the Adjustment of Unappropriated Lands in Puerto Rico of 1884. On September 9, 1887, the Mayor of Fajardo, Delfín Sierra, communicated to the Central Administrator of Taxes and Revenues, following the procedure authorized by § 12 of the same Regulations, that in view of the communication of September 2, 1887, from the General Commissioner of the Treasury, García and Lavaggi were in agreement with the statement made by the General Commissioner of the twenty cuerdas of pasture in the small island of "Hicacos," property of the above-mentioned gentlemen. In answer to the official letter of December 18, 1890, addressed to Juan Lavaggi by the Central Administrator of Taxes and Revenues, asking him to inform his acceptance "to enter into an adjustment with the Treasury as to the conditions of conversion in the Isle of Hicacos," said Juan Lavaggi, through the mayor of Fajardo Cristóbal Andreu, sent his statement of agreement to the adjustment with the General Commis-

sioner of the Treasury. The adjustment proceeding having been approved by His Most Excellent General Governor of Puerto Rico, on April 11, 1892, by virtue of the authority granted by § 13 of the Regulation, His Most Excellent General Commissioner of the Treasury informed the Mayor of Fajardo that "in accordance with the proposition of this Center and with the approval of His Most Excellent General Governor, I have decided to grant Juan Lavaggi the right to acquire by adjustment, after the proper survey and assessment, 45 cuerdas of land which were granted to Leandro Fort in the small island of 'Hicacos' of that jurisdiction. This I communicate to you for your own information and in order that you notify the interested person, who shall deposit 100 pesos in the mayor's office at the disposal of the officer authorized to attend the expenses of those transactions." Finally, we note that in the report rendered by the mine engineer, Frederick P. Bayles, to General George W. Davis, Governor of Puerto Rico, on July 23, 1899, it is said that of the group of three small islands, named "Hicacos", "Ratones," and "Lobo," the first two belong to a resident of Fajardo, and in the report rendered by the Mayor of Puerto Rico, José M. Rivera, to the Civil Department, on February 5, 1900, the islands of "Hicacos" and "Ratones" are registered as property of García and Lavaggi.

We have related *in extenso* the government record on which the original concession to Leandro Fort Torres is based, the reversion for nonperformance of conditions of the property sold to Juan Lavaggi and Ignacio García, and the adjustment given in favor of Juan Lavaggi, April 12, 1892, since by that time Ignacio García had died, his death having occurred on March 7, 1890, to show that there is no conflict of any kind between the final adjustment granted to Juan Lavaggi pursuant to the Regulations for the Adjustment of Unappropriated Lands in Puerto Rico of 1884, and the registry record of the first two entries of property

No. 104 recorded on folio 27 of the third volume of Fajardo of the Registry of Property of Humacao which serve as a basis for the successive performance of third parties in good faith. For greater clearness of title one succession inherits the share of Ignacio García as well as that corresponding to Juan Lavaggi. When on March 7, 1890, Ignacio García died, he declared as his sole and universal heirs his children José Ignacio, Heriberta, Josefa, and Aurelia García Becerril begotten in his marriage with Josefa Becerril Lafont; at the death of Juan Lavaggi on February 4, 1901, in default of legitimate children, his sole and universal heirs were his wife Rita Alonso Rivera who sold her share to the other heirs and to the children of his partner, Ignacio García, named José Ignacio, Heriberta, Josefa, and Aurelia García Becerril. It is these four heirs, owners of the entire two small islands "Hicacos" and "Ratones," who sold them to Jorge Bird Arias.

█ Having examined the original concession of the Superior Board of the Distribution of Barren Lands given to Leandro Fort Torres, there is no doubt of the legitimacy of its title. The concession is as much a legislative act as it is a private contract, and it may be a grant or an onerous transaction. It is true that in the original concession to Leandro Fort Torres there was a condition of cultivation of general application to all concessions of barren land, which in some way remains partially unfulfilled, but, it is not less true that the bad conditions of the land involved, the infertility thereof was not susceptible to the contemplated development in the general plan of cultivation, as it was shown by the disinterested witnesses who testified in adjustment proceedings, and, thus, it is not difficult to conclude, as a legal question, that there was a substantial fulfillment of the condition of cultivation by planting pasture for cattle grazing and in the exploitation of a quarry which was established in the distributed islands by Leandro Fort Torres as well

as by his successors in title deed, Ignacio García and Juan Lavaggi.

■ If we reach this conclusion, we must accept that the conditional concession granted to Leandro Fort Torres, by virtue of the substantial fulfillment of the condition, becomes a legitimate title, sufficient for the transfer of the ownership. We must likewise not forget, as we have said, that the concession is as much a legislative act as it is an administrative contract, and its interpretation must be made in the light of disinterested purpose, which always underlies the intention of the sovereign, as well as the special intention of the contractual will. In this manner the common purpose of ridding the barren lands of their natural state in order to make them productive and a part of the economy of the State is coupled with the particular aim of the grantee, in view of the difficulties not foreseen by the common purpose of cultivating pasture land instead of minor crops, and the raising of cattle instead of horticulture, which is also a manner of situating the two small islands in the traffic of tax assessment and lucrative commerce movement.

The possibility of a ground for nullity not of record which may alter the apparent legitimacy of the recorded title having been discarded, the allegation of the Commonwealth of Puerto Rico loses its best proof that it is the owner of any land subject to an unfulfilled conditional concession. This forces us to consider the present proceeding as if it were one of investigation by the State of an ordinary condemnation proceeding of private property subject to the constitutional provision, that "private property shall not be taken or damaged for public use except upon payment of just compensation." Since in the proceeding it was assumed that the property belonged to the State and not to third persons in good faith who acquired it in conformance with the entries in the registry, the first thing that must be amended is the just and reasonable value of the property

at the time it was taken. This being so, the order of January 31, 1966, of the Division of Eminent Domain of the Superior Court of Puerto Rico in case No. E-63-71 stating: "1—That the Commonwealth of Puerto Rico lacked title, right and interest in the small islands object of condemnation, and that the ownership of said islands belonged to the codefendant Best Builders, Inc." and "2—That the defendant is entitled to the just and reasonable market value of the properties at the time of their condemnation," is in conformance to law and shall be sustained, and the writ issued quashed.

Mr. Justice Ramírez Bages did not participate herein.